UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA,

Plaintiff,

-against-

GERRI L. RUDOMIN; IZAK RUDOMIN; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; DELTA FUNDING CORPORATION; NEW YORK CITY PARKING VIOLATIONS BUREAU; NEW YORK CITY ENVIRONMENTAL CONTROL BOARD; NEW YORK CITY TRANSIT ADJUDICATION BUREAU; FAIRMONT FUNDING LTD.,

"JOHN DOE #1" through "JOHN DOE #12," the last twelve names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises, described in the complaint,

Defendants.
-----------------------------------------------------------X

MEMORANDUM
AND ORDER
24 CV 2044 (RML)

LEVY, United States Magistrate Judge:

This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (See Consent to Jurisdiction by U.S. Magistrate Judge, so-ordered Aug. 14, 2025, Dkt. No. 46.) Plaintiff Federal National Mortgage Association ("plaintiff" or "Fannie Mae") moves for summary judgment, default judgment against each of the non-answering defendants, discontinuance of the action as against defendant Fairmont Funding Ltd., voluntary dismissal of plaintiff's second cause of action, removal of John Doe #1 through John Doe #12 as defendants, and the issuance of a judgment of foreclosure and sale.

(See Mot. for Default J. Against Non-Answering Defs. and Summ. J. against Izak Rudomin, dated Oct. 31, 2025, Dkt. No. 55.) Defendant Izak Rudomin cross-moves for summary judgment. (See Cross Mot. for Summ. J. by Izak Rudomin, dated Dec. 5, 2025, Dkt. No. 57.) For the reasons stated below, plaintiff's motion for summary judgment is granted and defendant Izak Rudomin's motion is denied.

## BACKGROUND AND UNDISPUTED FACTS[1]

Plaintiff commenced this action on March 20, 2024 to foreclose a Consolidation, Extension and Modification Agreement ("CEMA") on the residential property located at 1638 East 21st Street, Brooklyn, New York (the "Property"). (See Complaint, dated Mar. 20, 2024, Dkt. No. 1.) According to the complaint, plaintiff's consolidated mortgage on the Property secures a loan in the principal amount of $279,500, which has been in default since January 1, 2009. (Id. ¶¶ 15, 20.) Defendant Izak Rudomin ("defendant") answered the complaint on May 30, 2024 and amended his answer on August 6, 2025. (See Answer, dated May 30, 2024, Dkt. No. 15; Amended Answer, dated Aug. 6, 2025 ("Am. Answer"), Dkt. No. 43.) No other

[1] Unless otherwise noted, all facts are taken from the parties' statements of undisputed material facts submitted pursuant to Local Civil Rule 56.1. See LOC. CIV. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the [Local Civ. R. 56.1] statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); (Pl.'s E.D.N.Y. Local Civ. Rule. 56.1 Statement of Undisputed Material Facts As To Which There is No Genuine Issue to be Tried, dated Oct. 31, 2025, Dkt. No. 55-1; Def. Izak Rudomin's Response to Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated Dec. 5, 2025, Dkt. No. 59; Pl.'s Resp. to Def. Izak Rudomin's Statement of Material Facts Pursuant to Local Rule 56.1, dated Dec. 23, 2025, Dkt. No. 62). As permitted by Rule 56(e) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1746, the court also relies on sworn affidavits setting forth admissible facts based on personal knowledge and unsworn, written declarations "subscribed . . . as true under penalty of perjury, and dated." See FED. R. CIV. P. 56(e); 28 U.S.C. § 1746.

defendant has answered or moved with respect to the complaint or opposed plaintiff's motion for summary judgment.

Plaintiff has established that on July 6, 1999, defendant and his spouse Gerri L. Rudomin (the "Borrowers") executed a note in favor of GFI Mortgage Bankers, Inc. in the principal amount of $185,000, as well as a mortgage encumbering the Property. (See Affidavit of Talya Harris, sworn to Sept. 24, 2025 ("Harris Aff."), Dkt. No. 55-2, ¶¶ 6-7, Exs. B, C.) On August 29, 2002, the Borrowers executed a second note in favor of GFI Mortgage Bankers, Inc. in the principal amount of $116,595.18, as well as a second mortgage encumbering the Property. (Id. ¶¶ 10, 11, Exs. F, G.) On the same date, August 29, 2002, the Borrowers executed a Consolidated Note in favor of GFI Mortgage Bankers, Inc. in the principal sum of $279,500. (Id. ¶ 12, Ex. H.) The Consolidated Note was secured by the CEMA, also dated August 29, 2002, which consolidated the first and second notes and first and second mortgages to create a single lien. (Id. ¶ 13, Ex. I.)

The Consolidated Note and CEMA (the "Loan Documents") were assigned to GreenPoint Mortgage Funding, Inc. ("GreenPoint") by assignment of mortgage dated August 29, 2002. (Id. ¶ 14, Ex. J.) They were acquired by plaintiff on December 1, 2002 pursuant to a Mortgage Selling and Servicing Contract between GreenPoint and Fannie Mae. (Id. ¶ 15, Exs. F, G.) Several assignments of mortgage followed, with plaintiff being the assignee of record at the time this action was commenced. (Id. ¶ 17, Ex. N.)

The Borrowers defaulted under the terms of the Loan Documents by failing to make monthly payments of principal and interest beginning with the payment due for January 1, 2009 and continuing with each monthly payment due thereafter. (Id. ¶ 24, Ex. S.) On August 11, 2014, plaintiff commenced a foreclosure action against the Borrowers and others in New York

State court, Kings County. (See Declaration of William Knox, Esq., dated Oct. 31, 2025 ("Knox Decl."), Dkt. No. 55-43, ¶ 19, Ex. A.) That case was dismissed on March 16, 2023 for failure to comply with the notice requirements of New York Real Property Actions and Proceedings Law ("RPAPL") § 1304. (Id. ¶ 21, Ex. C .) Plaintiff did not perfect its appeal, and the case was administratively dismissed on January 25, 2024. (Id. ¶ 24.)

On June 5, 2023 and June 6, 2023, plaintiff's loan servicer, Nationstar Mortgage, LLC, sent thirty-day contractual notices to the Borrowers notifying them that they were in default of their obligations under the Loan Documents. (Harris Aff. ¶ 28, Ex. U; Declaration of Randal Wilhite, Esq., dated Dec. 5, 2025 ("Wilhite Decl."), Dkt. No. 58, Ex. 4.) Also on June 5, 2023 and June 6, 2023, ninety-day pre-foreclosure notices were sent to the Borrowers by certified and regular mail. (Harris Aff. ¶¶ 31-32, Exs. W, X; Wilhite Decl., Ex. 5.) Plaintiff states that, as of September 12, 2025, there was $707,473.34 due and owing under the Loan Documents, including principal, interest, and escrow advances for insurance and taxes. (Harris Aff. ¶ 36, Exs. S, AA.) Plaintiff seeks a judgment in that amount, plus $6,800 in attorney's fees and $1,120 in costs.[2] (Knox Decl. ¶ 40, Exs. R, S.)

Defendant does not deny that the Borrowers defaulted on their home loan in 2009 or that they received the notices of default. Rather, defendant argues that plaintiff's notices failed to comply with RPAPL § 1304 and the notice of default requirements of the Consolidated Mortgage. (See Mem. of Law in Supp. of Def. Izak Rudomin's Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J., dated Dec. 5, 2025 ("Def.'s Mem."), Dkt. No. 57-2, at 8-1; see also Am. Answer ¶¶ 34-35.) Defendant moves to dismiss the complaint on the ground that

[2] Plaintiff's request for $1,120 in costs is supported by a bill of costs itemizing costs and disbursements totaling $1,805. (Knox Decl., Ex. R.)

plaintiff did not strictly comply with the notice requirements of RPAPL § 1304 or with the notice of default provisions of the Consolidated Note, and that defendant did not waive these defenses to a foreclosure action. (Def.'s Mem. at 12-29.)

## DISCUSSION

### A. Summary Judgment Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are facts that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when a reasonable fact finder can render a verdict in the nonmoving party's favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (citation modified). "[T]he court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986).

"The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002)). "If the moving party meets its burden, the burden shifts to the non-moving party to bring forward specific facts showing a genuine issue for trial." Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co., 14 CV 7354, 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citation modified); see also FED. R.

CIV. P. 56(c). The non-moving party "may not rest upon mere allegations or denials of his pleading[s]." Anderson, 477 U.S. at 248; see also FED. R. CIV. P. 56(e). Rather, the non-moving party must support the assertion that a fact is genuinely disputed with facts "that would be admissible in evidence." FED. R. CIV. P. 56(c)(1)-(2). "[T]he mere existence of some alleged factual dispute between the parties" alone "will not defeat an otherwise properly supported motion for summary judgment," Anderson, 477 U.S. at 247-48, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). "If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." Gen. Ins. Co., 2016 WL 4120635, at *4 (citing Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).

B. Standing

Although defendant does not challenge plaintiff's standing to foreclose on the CEMA, since plaintiff is not an original party to the Note, I will briefly address plaintiff's standing to bring this foreclosure action. "Under New York law, '[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'" E. Sav. Bank, FSB v. Thompson, 631 F. App'x 13, 15 (2d Cir. 2015) (summary order) (quoting Wells Fargo Bank, N.A. v. Rooney, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)). So long as the Note is transferred through physical delivery or a written assignment before the foreclosure action is commenced, "the mortgage passes with the debt as an inseparable incident." Thompson, 631 F. App'x at 15 (quoting U.S. Bank, N.A. v. Collymore, 890 N.Y.S.2d 578, 580 (2d Dep't 2009)); see also Lasalle Bank Nat'l Ass'n v. Ahearn, 875 N.Y.S.2d 595, 597 (3d Dep't 2009) ("[A]n assignee of

such a mortgage does not have standing to foreclose unless the assignment is complete at the time the action is commenced."). The execution date is controlling as an effective date of the assignment when the assignment is in writing. Lasalle Bank, 875 N.Y.S.2d at 597.

Here, prior to commencement of this action on March 20, 2024 (see Compl.), Nationstar, as servicer for Fannie Mae, was in physical possession of the Consolidated Note for the benefit of plaintiff as of May 4, 2023. (See Harris Aff. ¶¶ 19-21.) Fannie Mae therefore has standing to maintain this action.

C. Foreclosure

"In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." U.S. Bank, N.A. v. Squadron VCD, LLC, 504 F. App'x 30, 32 (2d Cir. 2012) (summary order) (first citing R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 n.2 (2d Cir. 1997), and then citing United States v. Freidus, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)). Thus, "a plaintiff in a foreclosure action establishes prima facie entitlement to summary judgment 'by producing evidence of the mortgage, the unpaid note, and the defendant's default.'" CIT Bank N.A. v. Donovan, 856 F. App'x 335, 336 (2d Cir. 2021) (summary order) (quoting Wells Fargo Bank, N.A. v. Walker, 35 N.Y.S.3d 591, 592 (2016)); see also JPMorgan Chase Bank, Nat. Ass'n v. Weinberger, 37 N.Y.S.3d 286, 289 (2016). "This creates a 'presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor.'" Freedom Mortg. Corp. v. Heirs, No. 19 CV 1273, 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) (quoting E. Sav. Bank, FSB v. Evancie, No. 13 CV 878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014)).

Plaintiff has submitted executed copies of the Loan Documents, which describe the terms of the Borrowers' repayment obligations under the loan and provide that the

Borrowers' obligations are secured by the Property. (See Harris Aff., Exs. H, I.) In addition, plaintiff has established that the Borrowers defaulted on their obligations under the Loan Documents by failing to pay plaintiff all amounts due on the loan starting with the payment due for January 1, 2009 (id. ¶ 24, Ex. S), and that $707,473.34 remains unpaid (id. ¶ 36, Ex. AA). The Borrowers' nonpayment of loan obligations establishes plaintiff's "presumptive right to foreclose." Heirs, 2020 WL 3639989, at *4 (holding that plaintiff-mortgagee established a *prima facie* case and was entitled to foreclose where it produced the note and mortgage, as well as documentation of the defendant's nonpayment of loan obligations).

Once the plaintiff has established that it is entitled to summary judgment absent an applicable affirmative defense, "the defendant must adduce evidence which, viewed in the light most favorable to and drawing all reasonable inferences in favor of it, would permit judgment for it on the basis of that defense." Wilmington PT Corp. v. Gray, No. 19 CV 1675, 2025 WL 857979, at *6 (E.D.N.Y. Mar. 19, 2025) (citation omitted); see also Green Mountain Holdings, (Cayman) Ltd. v. LV 35 Ave. Corp., No. 22 CV 1395, 2024 WL 4309215, at *12 (E.D.N.Y. Sept. 25, 2024) (explaining that once a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, the burden shifts to the defendant to raise a triable issue of fact regarding affirmative defenses to foreclosure); Gustavia Home, LLC v. Rutty, 785 F. App'x 11, 14 (2d Cir. 2019) (explaining that after the plaintiff establishes a prima facie case, the burden then shifts to the defendant to make an affirmative showing of a "bona fide defense to the action.") (summary order) (quoting Capstone Bus. Credit, LLC v. Imperia Family Realty, LLC, 895 N.Y.S.2d 199, 201 (2010)). In his cross-motion for summary judgment and opposition to plaintiff's motion for summary

judgment, defendant raises no defenses to foreclosure other than those relating to the pre-foreclosure notices of default. (See Def.'s Mem.)

D. RPAPL § 1304 and Contractual Pre-Foreclosure Notices

"RPAPL § 1304 sets forth the requirements for notice to a borrower that a lender, assignee, or mortgage loan servicer must provide prior to commencing legal action against the borrower." Brown v. Amarante, No. 23 CV 3514, 2024 WL 4716364, at *11 (S.D.N.Y. Nov. 8, 2024), report and recommendation adopted, 2025 WL 934318 (S.D.N.Y. Mar. 27, 2025). It requires a foreclosing party to provide a specific notice document "at least ninety days" before any legal action is commenced. RPAPL§ 1304(1). The statute sets forth, *inter alia*, the following requirements for the notice: "(1) text in fourteen-point type; (2) text stating "YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY"; (3) information regarding government-approved housing counseling agencies available to assist borrowers in seeking home loan modifications; and (4) transmission of the notice via registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, the residence subject to the mortgage." United States v. Starr, No. 16 CV 1431, 2019 WL 13299930, at *3 (S.D.N.Y. Apr. 4, 2019); RPAPL§ 1304(1)-(2). "Proper service of RPAPL 1304 notice on the borrower or borrowers is a condition precedent to the commencement of a foreclosure action, and the plaintiff has the burden of establishing satisfaction of this condition." Deutsche Bank Nat'l Tr. Co. v. Spanos, 961 N.Y.S.2d 200, 202 (2d Dep't 2013) (citation modified); see also Hudson City Sav. Bank v. DePasquale, 977 N.Y.S.2d 895, 895 (2d Dep't 2014) ("[P]laintiff's failure to make a prima facie showing of strict compliance with RPAPL 1304 requires denial of its motion for summary judgment, regardless of the sufficiency of the opposing papers.").

Here, Fannie Mae has submitted copies of the ninety-day pre-foreclosure notices sent to the Borrowers on June 6, 2023. (Harris Aff., Exs. W, X.) The notices were sent by both certified and first-class mail (see id.); and they included the exact wording required by the statute, in English and Spanish, as well as an attached list of organizations the Borrowers could contact for counseling help. (Id.) Because this action was not commenced until March 20, 2024, 288 days after the notices were mailed to the Borrowers, plaintiff met the ninety-day statutory requirement. Defendant does not contest these facts.

Section 22 of the Consolidated Mortgage states that, prior to accelerating the loan, the mortgagee is required to send the Borrowers a notice that states, *inter alia*, that a default has occurred; what action the Borrowers must take to correct the default; the date by which the Borrowers must correct the default, which will be "at least 30 days" from the date on which the notice is given; and that if the default is not corrected by the date stated in the notice, the lender may require immediate payment in full, and the lender or another person may acquire the Property by means of Foreclosure and Sale. (See Harris Aff., Ex. I at 3, ¶ 22.) It is undisputed that plaintiff complied with these requirements by sending the Borrowers notices on June 5, 2023 and June 6, 2023 advising them that they had defaulted under the terms of the CEMA by failing to make required payments; that in order to cure the default they needed to pay the amount of $473,866; that the default had to be corrected by a date certain, which was more than thirty days from the date that the notice was given; and that failure to cure the default by the date specified in the notice could result in the acceleration of the debt, commencement of a foreclosure action, and a sale of the Property. (See Harris Aff., Exs. U, V.)

Defendant does not deny that he received these notices and does not claim to have cured the default. Rather, defendant contends that the pre-foreclosure notices were deficient

because: (1) "the lists of housing counseling agencies Plaintiff included with the two [§ 1304] notices it sent . . . were printed in smaller than 14-point type" (Def.'s Mem. at 9-10); and (2) the notices provided inconsistent and inaccurate information "about how much time Mr. Rudomin had to resolve the Rudomins' default before foreclosure could commence," (id. at 2) as the thirty-day notices of default dated June 5, 2023 gave the Borrowers until July 12, 2023 to cure the default (see Wilhite Decl., Ex. 4), the thirty-day notices dated June 6, 2023 gave the Borrowers until July 13, 2023 to cure the default (see Harris Aff., Ex. U), and the ninety-day notices dated June 5, 2023 and June 6, 2023 both warned: "If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you" (Wilhite Decl., Ex. 4; Harris Aff., Ex. W). (Def.'s Mem. at 16-17.)

Plaintiff argues that the Borrowers waived their defenses, and at any rate, the notices complied with RPAPL § 1304. The CEMA contains a provision entitled "V. NO SET-OFF, DEFENSES," which provides: "I agree that I have no right of set-off or counterclaim, or *any* defense to the obligations of the Consolidated Note or the Consolidated Mortgage." (Harris Aff., Ex. I, ¶ V, at 5 (emphasis added).) As a general matter, New York courts have "held that the waiver of the right to assert defenses, counterclaims or set offs" contained in a mortgage modification agreement "is enforceable and thus not violative as against public policy." Weiss v. Phillips, 65 N.Y.S.3d 147, 155 (1st Dep't 2017) (collecting cases); see also Car-Rol Funding Corp. v. Castronovo, 91 N.Y.S.3d 226, 227 (2d Dep't 2019) (holding that the defendant was not entitled to raise defenses to a foreclosure action, insofar as "[i]n the loan modification agreement, the defendant waived his right to assert defenses with respect to the note"); Parasram v. DeCambre, 668 N.Y.S.2d 454, 454 (1st Dep't 1998) (holding that defendants' "affirmative

defenses and counterclaims were properly rejected on the basis of his waiver in the mortgage of the right to interpose in a foreclosure proceeding any defense, setoff or counterclaim").

It is true that not all defenses may be captured by such waiver provisions. For example, "it has long been held that a waiver provision will not be enforced as to defenses based on fraud, as such enforcement would violate public policy." Green Mountain Holdings, (Cayman) Ltd. v. LV 35 Ave. Corp., No. 22 CV 1395, 2024 WL 4309215, at *14 (E.D.N.Y. Sept. 25, 2024) (quoting CWCapital Asset Mgmt. LLC v. Charney-FPG 114 41st St. LLC, 117469/2009, 2013 WL 5606731 (N.Y. Sup. Ct. Oct. 7, 2013)). It is also true, as defendant points out, that compliance with § 1304's notice provision is a condition precedent to bringing a foreclosure action, "such that the merits of a foreclosure claim cannot be entertained unless the condition is satisfied." (Def.'s Mem. at 26.) However, defendant does not claim that plaintiff failed to serve a ninety-day notice, and he cites no authority for the proposition that a technical defect in the provision of a default notice is a complete defense to foreclosure, let alone one that falls into the narrow public policy exception for waivers. (See Def.'s Mem. at 26-28); Gray, 2025 WL 857979, at *8 (declining to invalidate ninety-day notice "in view of the plaintiff's otherwise strict compliance with § 1304 and because the defendant has not argued that the claimed deficiency defeated the statute's purpose.").

Nor does defendant offer support for his arguments that the attached list of approved housing counseling agencies must be in fourteen-point font or that the waiver provision applies only to defenses that existed at the time of consolidation. (See Def.'s Mem. at 17-20, 23-24.) Defendant does cite case law holding that discrepancies in the dates on the pre-foreclosure notices can defeat summary judgment in some circumstances. (See Rep. Mem. of Law in Further Supp. of Def. Izak Rudomin's Cross-Mot. for Summ. J., dated Jan. 9, 2026, Dkt. No. 63,

at 5-6 (citing Green Tree Servicing, LLC v. Helmsorig, 212 N.Y.S.3d 668, 671-72 (2d Dep't 2024) (holding that triable issues of fact existed as to the sufficiency of the ninety-day notices sent to the borrower, precluding summary judgment, where the ninety-day notices contained a different default date than the contractual default notice); Sparta GP Holding Reo Corp. v. Lynch, 131 N.Y.S.3d 17, 19 (2d Dep't 2020) (denying summary judgment on the ground that a genuine issue of material fact existed as to whether the ninety-day notice of default was defective on its face when the cure date in the notice differed from the cure date in a subsequent notice of default)). However, courts have discretion to excuse errors or irregularities in the pre-foreclosure notices where appropriate. See, e.g., Aurora Loan Services, LLC v. Weisblum, 923 N.Y.S.2d 609, 617 (2d Dep't 2011) (noting that there could be circumstances under which a defect or irregularity in the strict compliance required by RPAPL Article 13 may be sufficiently *de minimus* to warrant ignoring it in an exercise of the court's discretion to avoid dismissal of the action) (citing N.Y. C.P.L.R. § 2001(stating that the court may disregard a "mistake, omission, defect or irregularity . . . if a substantial right of a party is not prejudiced")), abrogated on other grounds, Citibank, N.A. v. Contin-Scheurer, 98 N.Y.S.3d 273 (2d Dept. 2019); Bank of New York Mellon v. Dougherty, 92 N.Y.S.3d 603, 608-10 (N.Y. Sup. Ct., Suffolk Cnty. 2019) (excusing error and declining to "exalt[] form over compliance with the intent and purpose of the statute" where defendants appeared in foreclosure action and did not deny receiving the mandatory ninety-day notice, but nonetheless opposed foreclosure because of a discrepancy with the postmark date on a proof of filing statement); Castle Peak 2012-1 Loan Trust Mortg. Backed Notes, Series 2012-1 v. Connor, No. 4481-2013, 2018 WL 2976055, at *4 (N.Y. Sup. Ct., Suffolk Cnty. June 6, 2018) (holding that an error or irregularity in a mailing date may "be disregarded by the court" where "a substantial right of defendant has not been prejudiced.").

Defendant does not contend that the discrepancies in the cure dates among the four notices caused him any actual prejudice; he admits that he received the notices and does not claim that he had any intention of curing the default, regardless of the cure date. In light of this lack of prejudice, and the valid waiver of defenses, I find that defendant has not raised any triable issue of fact with regard to plaintiff's compliance with the statutory and contractual pre-foreclosure notices. Accordingly, plaintiff's motion for summary judgment is granted and defendant's cross-motion for summary judgment is denied.

E. Damages

If the complaint suffices to establish liability, the court must "conduct an inquiry to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." Sanchez v. Ms. Wine Shop Inc., 643 F. Supp. 3d 355, 365 (E.D.N.Y. 2022) (quoting Joe Hand Promotions, Inc. v. Benitez, No. 18 CV 6476, 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), report and recommendation adopted, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020)); see also Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) (citing FED. R. CIV. P. 55(b)(2)); see also Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

The Note and Mortgage, as the governing instruments, should determine any default damages. Builders Bank v. Rockaway Equities, LLC, No. 08 CV 3575, 2011 WL 4458851, at *5 (E.D.NY. Sept. 23, 2011). A party can substantiate damages by providing a "transaction history or detailed breakdown of the date and amount of each type of disbursement." Empire Cmty. Dev., LLC v. Larsen, No. 23 CV 5896, 2024 WL 4575290, at *3 (E.D.N.Y. Oct. 24, 2024) (citation omitted) (finding plaintiff's loan summary "that ke[pt] a running total of payments through" the date of the defendant's last payment paired with detailed interest calculations sufficient to establish damages amount), report and recommendation adopted, 2025 WL 327985 (E.D.N.Y. Jan. 29, 2025).

Plaintiff seeks a judgment of foreclosure and sale in the amount of $707,473.34, plus interest from September 13, 2025 to the date of judgment at the default rate of 7.25 percent per annum. (See Harris Aff. ¶ 36, Exs. S, AA; id., Ex. H at 2 ¶ 2 (setting interest rate of 7.25 percent); Knox Decl. ¶ 39.) The $707,473.34 due under the CEMA as of September 12, 2025 includes principal of $258,955.60; $315,034.32 in interest; $131,546.42 in escrow advances, plus additional costs. (Knox Decl. ¶ 39.) Plaintiff has provided the Borrowers' payment history, showing the principal balance. (See Harris Aff., Ex. S.) This is sufficient to establish the amount due. E. Sav. Bank, FSB v. Beach, No. 13 CV 341, 2014 WL 923151, at *10-11 (E.D.N.Y. Mar. 10, 2014) (awarding plaintiff amount requested where plaintiff provided the defendants' payment history). Judgment will therefore be entered in the amount of $707,473.34 plus interest at the rate of 7.250 percent from September 13, 2025 to the date of judgment.

F. Default Judgment

Plaintiff must bring suit against all parties with an interest in the Property because "[t]he absence of a necessary party in a foreclosure action leaves that party's rights unaffected by

the judgment and sale, and the foreclosure sale may be considered void as to the omitted party." Blue Castle (Cayman) Ltd. v. Miller, 772 F. Supp. 3d 416, 428 (S.D.N.Y. 2025) (quoting McWhite v. I & I Realty Grp., LLC, 179 N.Y.S.3d 302, 305 (2d Dep't 2022)). Plaintiff has therefore named as defendants, and now seeks default judgments against, non-answering defendants Gerri L. Rudomin, Mortgage Electronic Recording Systems, Inc., Delta Funding Corporation, New York City Parking Violations Bureau ("PVB"), New York City Environmental Control Board ("ECB"), and New York City Transit Adjudication Bureau ("TAB").

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default," as it has done here. FED. R. CIV. P. 55(a); (Clerk's Certificate of Default, dated Oct. 22, 2025, Dkt. No. 53.) Second, after a default has been entered against the defendants and the defendants fail to appear or move to set aside the default under Rule 55(c), the court may, on a plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). To grant a default judgment, the court must ensure that the plaintiff took all the required steps in moving for default judgment, including providing proper notice to defendants of the lawsuit. Here, plaintiff has demonstrated that all defendants were properly served with the summons and complaint. (See Affirmation of Eric Sheidlower, Esq., dated Oct. 16, 2025, Dkt. No. 52, Ex. A.) Plaintiff has also demonstrated that defendants were served with the Motion for Default Judgment and accompanying submissions in compliance with Local Civil Rule 55.2(c). (See Decl. of Mailing of Marquise Gayle, dated Oct. 30, 2025, Dkt. No. 55-66.)

An entry of default alone is insufficient to establish liability, "since a party in default does not admit mere conclusions of law." Trs. of the Plumbers Loc. Union No. 1 Welfare

Fund v. Philip Gen. Constr., No. 05 CV 1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citation omitted). A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court must also "determine whether [the plaintiff's] allegations establish [the defendants'] liability as a matter of law." Id.

With respect to defendant Gerri L. Rudomin, plaintiff has established a prima facie entitlement to a judgment of foreclosure. Plaintiff has presented evidence of the notes, the mortgages, and the CEMA. (See Harris Aff., Exs. B, C, F, G, H, I.) In addition, plaintiff has established this defendant's default on her obligations under the CEMA. (See Harris Aff. ¶ 24, Ex. S.) Having defaulted in answering or otherwise responding to plaintiff's complaint, this defendant has failed to contest the existence and validity of the CEMA or the Borrowers' default and, therefore, is deemed to have admitted these facts. Plaintiff's motion for default judgment is therefore granted as to Gerri L. Rudomin.

As for the remaining defendants, "entry of default judgment against non-mortgagor defendants is generally appropriate where the complaint alleges 'nominal liability,' meaning that 'any judgments or liens a defendant may have against the property are subordinate to the plaintiff's lien.'" NDF1, LLC v. Cunningham, 754 F.Supp.3d 273, 285 (E.D.N.Y. 2024) (citation modified). Plaintiff has established that defendants Mortgage Electronic Registration Systems, Inc. and Delta Funding Corporation have nominal liability by virtue of holding a

subordinate mortgage that encumbers the Property, which was recorded on October 30, 2003. (See Knox Aff. ¶ 43, Ex. T.) Therefore, default judgment is granted against these defendants.

However, courts apply a heightened pleading standard to determine whether a plaintiff has established nominal liability for municipal defendants in foreclosure actions. Windward Bora, LLC v. Thompson, No. 18 CV 1811, 2020 WL 1242828, at *5 (E.D.N.Y. Mar. 16, 2020) (explaining that courts apply a heightened pleading standard where a state or city agency is named as a defendant). "The complaint must allege 'detailed facts showing the particular nature of the interest in or lien on the real property and the reason for making the state or city agency a party-defendant.'" Id. (alterations omitted) (quoting N.Y. R.P.A.P.L. §§ 202(1), 202-a(1)). In addition, the plaintiff must substantiate its allegations with documentation. See, e.g., Cunningham, 754 F.Supp.3d at 286 (explaining that the complaint must allege "detailed facts showing the particular nature of the interest in or lien on the real property and the reason for making the . . . city agenc[ies]" party defendants and "substantiate [plaintiff's] allegations with documentation, such as a title report."); Windward Bora LLC v. Baez, No. 19 CV 5698, 2020 WL 4261130, at *4 (E.D.N.Y. July 24, 2020) (collecting cases).

The complaint does not satisfy this requirement in asserting claims against PVB, ECB, and TAB. It does not allege that any of these agencies holds any particular interest in or lien on the Property, but offers only boilerplate assertions that each agency "is a necessary party defendant to this action by virtue of the fact that it is the holder of possible liens against the Subject Property." (Compl. ¶¶ 7-9.) Without "detailed facts showing the particular nature of the interest in or lien on the real property[,]" these conclusory allegations do not establish a claim against PVB, ECB, or TAB under New York law. See RPAPL § 202-a; see also Wilmington PT Corp. v. Gray, No. 19 CV 1675, 2020 WL 7684876, at *7 (E.D.N.Y. Oct. 22, 2020), report and

recommendation adopted, 2020 WL 7296858 (E.D.N.Y. Dec. 11, 2020). Accordingly, plaintiff's motion for a default judgment against these defendants is denied without prejudice.

G. Other Requests

Plaintiff requests voluntary dismissal of its second cause of action, which seeks relief under Article 15 of the RPAPL, as the title issue that related to an open prior mortgage was resolved due to the issuance of a satisfaction of mortgage recorded on February 13, 2018. (See Knox Decl. ¶ 44, Ex. U.) Plaintiff also seeks to discontinue the action as against Fairmount Funding Ltd. ("Fairmount"), as its joinder related only to plaintiff's second cause of action, which plaintiff seeks to voluntarily dismiss. (See id. ¶ 45.) It asks that the caption be amended to drop Fairmount. (See id.) Plaintiff further seeks to amend the caption to remove John Doe #1 through John Doe #12 as defendants, as those defendants have not been served with the summons and complaint and therefore are not necessary or proper party defendants. (See id. ¶ 46.) These unopposed requests are granted.

H. Attorney's Fees and Costs

Plaintiff moves for attorney's fees and costs incurred throughout this action. The CEMA allows for recovery of fees in connection with foreclosure proceedings. (See Harris Aff., Ex. I at 31-3, ¶ 22.) Because the fees and costs can be determined at the time of foreclosure and added to the delinquent balance, it is appropriate to leave this issue to the mortgage referee. See PHH Mortg. Corp. v. Youngwells, No. 25 CV 6656, 2026 WL 2474473, at *4 (E.D.N.Y. Aug. 24, 2026) (denying request for attorney's fees relating to the foreclosure without prejudice since fees could be determined by the referee); Secured Asset Mgmt., LLC v. Cong. Beth Joseph Zwi Dushinsky, No. 17 CV 5588, 2023 WL 2429689, at *2 (E.D.N.Y. Mar. 9, 2023) (appointing

"referee . . . to: (1) compute the amounts due[,] including the total amount owed in default . . . and attorneys' fees and costs, and (2) conduct a foreclosure sale[.]").

I. Appointment of Referee

"[C]ourts routinely appoint referees to effectuate the sale of foreclosed properties." Cit Bank, N.A. v. Coombes, No. 17 CV 5871, 2019 WL 2516729, at *8, (E.D.N.Y. May 23, 2019). Plaintiff is directed to propose the names of three prospective referees within thirty days of the date of this Memorandum and Order. See Nationstar Mortg. LLC v. Atanas, 285 F. Supp. 3d 618, 628 (W.D.N.Y. 2018) (directing plaintiff to submit the names of three proposed referees along with a brief description of their qualifications, and citing cases).

## CONCLUSION

Plaintiff's motion for summary judgment and for a judgment of foreclosure and sale is granted and defendant Izak Rudomin's cross-motion for summary judgment is denied. Plaintiff's motion for default judgment is granted with respect to defendants Gerri L. Rudomin, Mortgage Electronic Registration Systems, Inc. and Delta Funding Corporation, and denied as to defendants New York City Parking Violations Bureau, New York City Environmental Control Board, and New York City Transit Adjudication Bureau. Plaintiff's motion to voluntarily dismiss its second cause of action and to discontinue the action as against Fairmount Funding Ltd. is granted. The Clerk of Court is directed to terminate defendants John Doe #1 through John Doe #12.

SO ORDERED.

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
September 30, 2026